# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | |
|---|---|
| DARYUSH VALIZADEH, an individual, ) | |
| ) | Civil Action No. 3:16-cv-03098-MGL |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| JANE DOE, a/k/a "Susan"; and JOHN ) | **MOTION TO DISQUALIFY** |
| AND JANE DOES 2-10, all whose true ) | **WALLACE LIGHTSEY AND THE** |
| names are unknown, ) | **WYCHE LAW FIRM** |
| ) | |
| Defendants. ) | |
| ) | |

Plaintiff, Daryush Valizadeh (hereinafter referred to as "Valizadeh" or "Plaintiff") hereby moves to disqualify Wallace Lightsey, Esq. and the Wyche Law Firm from the representation of a hostile witness, S. Jane Gari, to protect both his rights and to protect the integrity of the legal process.

Plaintiff was a prospective client of Wallace Lightsey and the Wyche Law Firm in this very matter. The Wyche firm engaged in prospective client communications with Plaintiff's counsel, in which the Wyche firm was informed of the identities of the Plaintiff and the most material witness, Ms. Gari. The Wyche firm received confidential information from the Plaintiff, and then, 24 hours later, informed the Plaintiff that it had a "conflict," without further elaboration. Four months later, Wyche Law Firm, acting as counsel to that witness Ms. Gari, now attempts to thwart the legitimate and simple discovery requests approved by this Court, in which Mr. Valizadeh seeks only to identify those who have defamed him. Furthermore, the Wyche Firm has used its confidential prospective client communications with Plaintiff's counsel to support Gari's effort to quash subpoenae served by Plaintiff. (Dkt. No. 10, p. 3). The Wyche

Firm and Wallace Lightsey should be disqualified from representing a witness adverse to Plaintiff in this matter for these reasons elaborated upon below.

**1.0    Factual Background**

As set forth in the Complaint, Mr. Valizadeh was defamed in a blog post written by S. Jane Gari in which she claimed that a woman, identified as "Susan", accused him of rape. (*See* Dkt. No. 1 at ¶¶ 8-10). Plaintiff denies this accusation and has sought to vindicate his reputation ever since. (*See id.* at ¶ 16).

Following the publication of the false rape accusation, two possible explanations occurred to Plaintiff: either Ms. Gari fabricated the tale or she blindly chose to believe and regurgitate the false tale of a third party. Since the tale was false, his first instinct was to suspect Ms. Gari herself fabricated the tale. However, he was nonetheless prepared to give her the benefit of the doubt, and his counsel reached out to her to resolve the matter. (*See* **Exhibit 1**, Letter from Marc J. Randazza to S. Jane Gari dated February 16, 2016).

Ms. Gari was not represented by an attorney from the Wyche Law Firm in response to that letter. Instead, on February 18, 2016, Benjamin D. McCoy, an attorney at Howser, Newman, & Besley of Columbia, South Carolina, contacted Plaintiff's counsel. The prospect of continued negotiations with Attorney McCoy seemed likely and on a positive trend. (*See* **Exhibit 2**, Declaration of Marc J. Randazza ("Randazza Decl."), at ¶¶ 4-5).

A new attorney for Ms. Gari contacted Plaintiff's counsel, Paul S. Levine the next day, and Mr. McCoy was no longer involved in the matter. (*See* **Exhibit 3**, Email from Paul S. Levine to Marc J. Randazza dated February 20, 2016). Attorney Levine, unlike Mr. McCoy, took an aggressive tack, asserting a far-fetched theory that Mr. Valizadeh was actually the one guilty of defamation. (*See* **Exhibit 4**, Letter from Paul S. Levine to Marc J. Randazza dated

February 22, 2016). He also doubled-down on Ms. Gari's claim that "Susan" exists by making personal representations as to the veracity and credibility of the alleged source material. (*See id*). Notably, Mr. Levine waived any argument that Ms. Gari might be protected by the shield law, specifically insisting that she is not a journalist. (See *id*).

Plaintiff refused to agree to any of Ms. Gari's demands. Then, a third attorney, William K. Wray, Esq. contacted Plaintiff's counsel on March 18, 2016. (*See* Randazza Decl. at ¶ 9). As Ms. Gari kept presenting new attorneys, it appeared that a direct approach with Ms. Gari was going to be fruitless. Thus, Plaintiff decided to file suit against the Doe defendants.

As "Susan" could be anywhere (presuming she exists) and Mr. Levine made factual representations that there were multiple other parties corroborating her story, the proper place to file this suit was unclear. At the very least, South Dakota was an option, since it is Mr. Valizadeh's legal residence. The South Dakota court voiced doubt that personal jurisdiction could lie in South Dakota. Mr. Valizadeh preferred to expend legal resources on the merits rather than a 12(b)(2) dispute – thus he considered his other multiple options. He then sought the assistance and counsel of South Carolina lawyers.

All Plaintiff knew as far as possible conflicts in South Carolina was that Ms. Gari was, at one point, represented by Howser, Newman, & Besley; the name "Wyche Law Firm" had not previously come up. Plaintiff's counsel reached out to attorney Talley Parham Casey of the Wyche Law Firm on July 7, 2016 as prospective local counsel. (*See* **Exhibit 5**, email from Jay M. Wolman to Talley Parham Casey dated July 7, 2016).

On July 11, 2016, Plaintiff's counsel spoke with Ms. Casey on behalf of Plaintiff. (*See* **Exhibit 6**, Declaration of Jay M. Wolman ("Wolman Decl."), at ¶ 7). During the telephone call, in the course of Ms. Casey's inquiry into the nature of the claim before agreeing to represent

- 3 -

Plaintiff, Plaintiff's counsel disclosed the names of Plaintiff and the material witness, S. Jane Gari. (*See id.* at ¶ 8; *see also* **Exhibit 7**, email from Jay M. Wolman to Talley Parham Casey dated July 11, 2016.) Plaintiff's counsel further disclosed that Mr. Valizadeh, her prospective client, was an author of travel guides who was looking to bring a defamation claim arising out of an accusation of rape published on the blog of S. Jane Gari, a resident of Elgin, South Carolina. (*See* Wolman Decl. at ¶ 9.) Ms. Casey did not disclose a conflict of interest at any time during that call. (*See id.* at ¶ 10). However, that was not the limit of the conversation. In a back and forth discussion, the Wyche firm was given confidential information and work product impressions about the previously-filed case in South Dakota. (*See id.* at ¶ 14). The Wyche Law Firm was given confidential information about Mr. Valizadeh's prior and proposed tactics in this case, including (but not limited to) the expectation that a motion for early discovery would be required. (*Id.* at ¶ 15.) Ms. Casey indicated that Wallace Lightsey would be her co-counsel in the matter upon the commencement of representation. (**Exhibit 7** at. p. 2). There was more than a reasonable expectation that Attorneys Casey, Attorney Wallace Lightsey, and the Wyche Law Firm were likely to form an attorney-client relationship with Plaintiff.

Surprisingly, on July 12, 2016, Ms. Casey informed Plaintiff's counsel that the Wyche Law Firm had a conflict and would not represent Plaintiff in this matter. (*See* **Exhibit 8**, email from Talley Parham Casey to Jay M. Wolman dated July 12, 2016). No reason was given as to the nature of the conflict; the firm might not have ultimately been interested in the matter, Ms. Gari might have been a prior client, the firm might have been representing another party in a claim involving Ms. Gari's blog, the firm might have had another tangential matter, or the firm might have simply had an institutional conflict, but Plaintiff had no reason to speculate they were representing her in this dispute. (Wolman Decl. at ¶ 23). In fact, they could have said they

- 4 -

represented Ms. Gari, but chose to keep that fact to themselves (for what now appears to be an obvious reason).

Now, for the first time, on the day before Ms. Gari was due to respond to the subpoena, the Wyche Law Firm lodged objections to that subpoena and filed a motion to quash. (*See* **Exhibit 9**, Letter from Wallace K. Lightsey dated December 1, 2016; *see also* Doc. No. 10).

In the Motion to Quash, the Wyche Law Firm claims, without factual support, that Mr. Valizadeh should have known that they were representing Ms. Gari, stating:

> Roosh V and his attorneys almost certainly knew that the Wyche firm was representing Ms. Gari because they communicated with members of the firm about the case prior to filing in South Carolina.

Doc. No. 10 at 3.

Yet nothing in their prior dealings suggested as much.[1]  Neither Mr. Valizadeh nor his counsel could divine that the firm violated the ethical rules and was representing Ms. Gari in this matter, despite receiving confidential and damaging information from Mr. Valizadeh.  Plaintiff has only now learned the Wyche Law firm is misusing the confidential information revealed to them.

**2.0     Legal Standard**

In the District of South Carolina, "a motion to disqualify is a matter subject to the court's general supervisory authority to ensure fairness to all who bring their case to the judiciary for resolution." *Clinton Mills. Inc. v. Alexander & Alexander. Inc.*, 687 F. Supp. 226, 228 (D.S.C. June 1, 1988).  Pursuant to District Court Local Rule 83.I.08, the District Court of South Carolina has adopted the Code of Professional Responsibility, which the Supreme Court of South Carolina adopted under Rule 407 of the South Carolina Appellate Court Rules, as its Code of

---

[1]   Neither, of course, is Plaintiff aware of any obligation to serve a copy of a complaint and motion practice upon a non-party to a lawsuit.  Ms. Gari is a material witness, not a defendant.

Professional Responsibility. Local Civil Rule 83.I.08 DSC. When the Court must make a disqualification determination, it does not

> weigh the circumstances with hair splitting-nicety but, in the proper exercise of supervisory power over the members of the bar and **with a view of preventing the appearance of impropriety, it is to resolve all doubts in favor of disqualification**.

*United States v. Clarkson*, 567 F.2d 270, 273 n.3 (4th Cir. 1977) (internal quotation marks and citations omitted) (emphasis added). It is in the public's interest to see that those who practice before the Court adhere to the South Carolina Code of Professional Responsibility. *Clinton Mills, Inc.*, 687 F. Supp. at 228.

Although even the appearance of impropriety is sufficient, there is an actual conflict of interest in this case.

**3.0    The Wyche Law Firm Must Be Disqualified**

The Wyche Law Firm has attempted to turn its confidential communications with the Plaintiff into a tactical advantage. There is no tactical advantage here, just a clear admission that it has violated Rule 1.18 of the South Carolina Rules of Professional Conduct and that it must be disqualified. Ms. Gari's Motion to Quash spends much of its time trying to paint Mr. Valizadeh as a cartoon villain, apparently not giving this Court the credit that it will see through this – and decide the matter on the facts and the law, not on the basis of table pounding and invective.[2] Ms. Gari, through the Wyche Law Firm, accuses Plaintiff of procedural misdeeds, including not serving copies of pleadings upon them. Meanwhile, as the facts bear out, the first time that anyone informed Mr. Valizadeh of the fact that the Wyche Law Firm represented Ms. Gari was

---

[2]    As will be shown in opposition to the motion to quash, it is a prime example of "pounding on the table." *See, e.g., Findley v. Jones Motor Freight, Div. Allegheny Corp.*, 639 F.2d 953, 960 (3d Cir. Pa. 1981) (discussing the "trial lawyer's aphorism" of "If you can't pound on the law or the facts, pound on the table.").

on December 1, 2016, when they sent a letter objecting to the discovery.  (*See* **Exhibit 9)**.  Certainly, the Wyche firm was the last firm that Mr. Valizadeh could have expected to represent Ms. Gari, as they never so much as informed him that they chose to represent Ms. Gari, much less sought his waiver of the conflict.

As South Carolina appears to have only recently adopted Rule 1.18, based on the model ABA Rule, there are no decisions interpreting it.  Nevertheless, it is a universal rule that "a lawyer owes duties of confidentiality and loyalty to any person with whom the lawyer **discusses the possibility of forming a client-lawyer relationship."**  Amber Hollister, "Pitfalls of Gift-giving and Free Advice," 72 Or. St. B. Bull. 9, 11.  This is true "even if the discussion takes place in an unorthodox setting."  *Id*.; *see also* E. Norman Veasey, "Ethics 2000: Thoughts and Comments on Key Issues of Professional Responsibility in the Twenty-First Century," 5 Del. L. Rev. 1, 14.  South Carolina Rules of Professional Conduct 1.18 prohibits a lawyer from consulting with a prospective client and then subsequently representing the adverse party in the very matter leading to the consultation.  The affected parties can waive their rights, under certain conditions.  There has been no such waiver.

Specifically, Rule 1.18 states:

**Rule 1.18 Duties to Prospective Client**
(a)     A person with whom a lawyer discusses the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client only when there is a reasonable expectation that the lawyer is likely to form the relationship.
(b)     Even when no client-lawyer relationship ensues, a lawyer who has had discussions with a prospective client shall not use or reveal information learned in the consultation, except as Rule 1.9 would permit with respect to information of a former client.
(c)     A lawyer subject to paragraph (b) shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received information from the prospective client that could be significantly harmful to that person in the matter, except as provided in paragraph (d) If a lawyer is disqualified from representation under this paragraph, no lawyer in a firm with which that lawyer is associated may knowingly

> undertake or continue representation in such a matter, except as provided in paragraph (d).
> (d)    When the lawyer has received disqualifying information as defined in paragraph (c), representation is permissible if:
>> (1) both the affected client and the prospective client have given informed consent, confirmed in writing, or
>> (2) the lawyer who received the information took reasonable measures to avoid exposure to more disqualifying information than was reasonably necessary to determine whether to represent the prospective client; and
>>> (i)    the disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; and
>>> (ii)   written notice is promptly given to the prospective client.

First, Plaintiff was a prospective client within the meaning of Rule 1.18(a). As discussed above, Plaintiff's counsel, on behalf of Plaintiff, communicated with Ms. Casey, for herself, Attorney Wallace K. Lightsey, and the entire Wyche Law Firm. *See In re Grand Jury Proceedings Under Seal*, 947 F.2d 1188, 1191 (4th Cir. 1991) ("communications by the client's agent to the attorney are privileged") citing *United States v. Kovel*, 296 F.2d 918, 922 n.4 (2d Cir. 1961). Ms. Casey wished to pursue the representation, stating "I hope we get the opportunity to work together." (*See* **Exhibit 7**). But for the post-discussion reveal of the conflict of interest, Attorney Lightsey and the Wyche Law Firm were reasonably expected to likely have represented Plaintiff.

Second, Attorney Lightsey and the Wyche Law Firm are seeking to use and reveal information learned in the consultation under Rule 1.18(b). For example, they have brought up the issue of the South Dakota litigation, despite it having no bearing on the instant matter, in an attempt to question the propriety of the litigation. The South Dakota court was primarily concerned with personal jurisdiction, not with whether early discovery might be taken from Ms. Gari to discover the Doe defendants' identities.[3] The Wyche firm was given confidential

---

[3]   That issue involved whether the injury to Mr. Valizadeh was sufficiently directed to South Dakota. Here, there is no question that the defamation was specifically directed to South

information and work product impressions about the previously-filed case in South Dakota and proposed tactics in this litigation. (Wolman Dec. at ¶ 14.) And now attempts to unethically use it against Mr. Valizadeh.

Third, the information is sufficiently harmful under Rule 1.18(c). The Wyche Firm knew Mr. Valizadeh would file suit here, knew he would seek leave to take early discovery, and yet have improperly questioned the propriety of his subpoena. They are attempting to use what they learned against him, through a mixture of improper disclosure and false representation. It is difficult to determine the extent of the damage from the Wyche firm's transgressions. Certainly, they must have communicated at least some, if not all, of the confidential information given to them in July to at least Ms. Gari and/or Attorney Levine, or other members of this group that is bent on promoting this story that Mr. Valizadeh raped "Susan."

We need not have actual evidence of their doing so in order to insist upon disqualification. However, we see at least the tip of the iceberg in the Motion to Quash. (Doc. No. 10 at 3.) There, they attempt to use the fact of the prospective client conference as a sword against Mr. Valizadeh. Even the mere fact of a consultation should have remained confidential. Failing to keep it so makes the Rule 1.18 violation clear. In interpreting its analogous rule, the Montana Supreme Court held "When the fact of a consultation is used to attack and intimidate a party, such conduct constitutes a violation of Rule 1.20 and will support a motion for sanctions, including disqualification." *Keuffer v. O.F. Mossberg & Sons, Inc.*, 2016 MT 127, ¶ 16, 383 Mont. 439, 445, 373 P.3d 14, 18 (Mont. 2016).[4] Here, that is exactly what occurred. The fact of

---

Carolina where it was published in that state and a South Carolina blogger was contacted in order that it might be published there.

[4] Montana Rule of Professional Conduct 1.20 is the analog to South Carolina Rule of Professional Conduct 1.18. *See Keuffer v. O.F. Mossberg & Sons, Inc.*, 2016 MT 127, ¶ 13, 383 Mont. 439, 444, 373 P.3d 14, 17-18 (Mont. 2016).

the consultation was used to attack Mr. Valizadeh. That attack alone mandates disqualification. This conflict is "manifest and glaring" such that it confronts "the court with a plain duty to act." *Clemens v. McNamee*, 2008 U.S. Dist. LEXIS 36916, at **5-6 (S.D. Tex. May 6, 2008) (quoting *In re Yarn Processing*, 530 F.2d 83, 88-89 (5th Cir. 1976)). Simply put, "the perception of a problem" by Plaintiff "is real and justifiable and [] he did not create the problem." *Chemcraft Holdings Corp. v. Shayban*, 2006 NCBC 13, 39 (N.C. Super. Ct. 2006). The harm under Rule 1.18(c) is evident.

Finally, there was no consent from Mr. Valizadeh under Rule 1.18(d). There was no notice of the specific disqualification or conflict. In fact, the Wyche Law Firm was the first firm to represent Ms. Gari without promptly sending a letter or an email informing Mr. Valizadeh's counsel. Attorney Lightsey, who Attorney Casey stated would be involved in her potential representation of Plaintiff, has not been screened—to the contrary, he has appeared. There is no basis under Rule 1.18(d) to avoid disqualification.

Other courts in the Fourth Circuit have considered the identical requirements of Rule 1.18 as adopted elsewhere. In *Attic Tent, Inc. v. Copeland*, No. 3:06CV66-W, 2006 U.S. Dist. LEXIS 57601, at *19-20 (W.D.N.C. Aug. 14, 2006), a prospective client, the defendant, sought to retain a lawyer on a patent matter and discussed the design and construction of a product central to the litigation; the court disqualified the lawyer from representing the plaintiff. As another North Carolina court observed, "The aim of Rule 1.18 is to prevent a lawyer who acquires strategic information from a prospective client from using that information against the client. On the battlefield, stumbling upon an opponent's secret plans may determine the outcome of an engagement; but in the courtroom, Rule 1.18 protects litigants from this fate by prohibiting an attorney from using confidential information to the detriment of a prospective client." *Chemcraft*

*Holdings Corp. v. Shayban*, 2006 NCBC 13, 42, 2006 NCBC LEXIS 15, *20 (N.C. Super. Ct. 2006). Here, Plaintiff's counsel discussed with the Wyche Law Firm the theory of the case central to the litigation, where Ms. Gari is now seeking to shield the Doe Defendants; the Wyche Law Firm must similarly be disqualified; it is seeking to use the confidential discussion to the detriment of Plaintiff, the prospective client. Even when such conduct is completely innocent, disqualification is the only proper remedy. *See, e.g., Cascades Branding Innovation v. Walgreen Co.*, 2012 U.S. Dist. LEXIS 61750, *26 (N.D. Ill. May 3, 2012) (interpreting Illinois Rule of Professional Conduct 1.18. Ms. Gari's right to retain Mr. Lightsey and the Wyche Law Firm, her fourth set of lawyers, "are outweighed by the public perception of and trust in the judicial system." *SuperGuide Corp. v. DirecTV Enters.*, 141 F. Supp. 2d 616, 624 (W.D.N.C. 2001) (internal citation and quotation marks omitted).

**4.0     Conclusion**

It is not lost on Mr. Valizadeh that depriving a party of its counsel should not be taken lightly. However, in this case is it manifestly necessary. Not only is the violation clear, but it has already been used to Mr. Valizadeh's disadvantage. On the other hand, the prejudice to Ms. Gari will be minimal. She has had no shortage of other lawyers representing her, including other capable and professional lawyers in South Carolina. If she is merely deprived of this particular local counsel in this case, she has adequate alternatives to assist Attorney Levine. Additionally, this is being raised within days of the violation coming to light. It is not as if the Wyche Law firm has had extensive activity in this case. And, if they have, they can complain to nobody but themselves for failing to announce their representation to known counsel, and apparently taking steps to conceal their Rule 1.18 violations. Finally, in the event that Ms. Gari needs additional time in which to re-engage Howser, Newman, & Besley or engage other South

Carolina local counsel, Mr. Valizadeh will extend all reasonable courtesies and stipulate to her being granted 30 days in which to do so.

Counsel for Plaintiff has consulted with Ms. Gari's counsel prior to filing this motion and they oppose the same.

WHEREFORE Plaintiff respectfully requests that Attorney Lightsey and the Wyche Law Firm be disqualified from representing S. Jane Gari in this matter.

Dated: December 6, 2016.                    Respectfully Submitted,

/s/ J. Paul Porter
J. Lewis Cromer (#362)
J. Paul Porter (#11504)
J. LEWIS CROMER & ASSOCIATES, LLC
1418 Laurel Street, Ste. A
Post Office Box 11675
Columbia, SC 29211
Phone  803-799-9530
Fax      803-799-9533
Email: <pporter@jlewiscromerlaw.com>

Jay M. Wolman *pro hac vice*
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, CT 06103
Tel:  702-420-2001
Fax:  305-437-7662
Email: <ecf@randazza.com>

LaTeigra C. Cahill
*Pro Hac Vice* Motion Forthcoming
4035 S. El Capitan way
Las Vegas, NV 89147
Tel:  702-420-2001
Fax: 305-437-7662
Email: <ecf@randazza.com>

*Attorneys for Plaintiff, Daryush Valizadeh*

- 12 -

Civil Action No. 3:16-cv-03098-MGL

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 6th day of December, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that a true and correct copy of the foregoing document is being served via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ J. Paul Porter
J. Paul Porter